JUSTIN D. HEIDEMAN (USB No. 8897)
JUSTIN R. ELSWICK (USB No. 9153)
**HEIDEMAN & ASSOCIATES**
2696 North University Avenue, Suite 180
Provo, Utah 84604
Telephone: (801) 472-7742
Facsimile: (801) 374-1724
Email: jheideman@heidlaw.com
        jelswick@heidlaw.com
*Attorneys for Plaintiff Eric Dowdle*

## IN THE UNITED STATES DISTRICT COURT IN AND FOR
## THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ERIC DOWDLE,<br><br>     Plaintiff,<br><br>vs.<br><br>AMERICANA ART ENTERPRISES, LLC, a Utah limited liability company<br><br>     Defendant. | **COMPLAINT FOR DECLARATORY JUDGMENT AND DEMAND FOR JURY TRIAL**<br><br>Case No.<br><br>Judge: |

Plaintiff Eric Dowdle, by and through its counsel undersigned, hereby files this

Complaint against Defendant Americana Art Enterprises, LLC as follows:

### STATEMENT OF THE CASE

1.    Plaintiff Eric Dowdle ("Plaintiff" or "Eric') is a painter and artist who has created

original paintings for more than thirty years.

2.    Since the early 1990's Eric has created at least four-hundred and seventy one (471)

paintings, eleven (11) of which are Disney-themed paintings.

3.    The eleven (11) Disney-themed paintings are not at issue in this action and Eric makes no

claim of copyright ownership of these Disney-themed paintings. The remaining 460

paintings (the "Artworks") are the subject of this action.

4.    Defendant Americana Art Enterprises, LLC ("Americana") is an art-studio company based in Utah County, State of Utah that manufactures and sells Eric's Artowrks in various configurations, including puzzles.

5.    Americana was created by Eric in 2003 to further expand product lines featuring his paintings in various configurations.

6.    In April 2021, Americana hired Joseph ("Joseph") as "President and Chief Innovation Officer."

7.    At the time he was hired, Joseph was required to report to Eric (who was the C.E.O. of Americana) and the two other owners, Mark Dowdle and Wendy Hemingway.

8.    Subsequently, Joseph has orchestrated the removal of Eric as C.E.O. and as a Manager of Americana.

9.    From the beginning of his involvement with Americana approximately one year ago, Joseph has also increased his own voting power and ownership interest.

10.   Eric and Joseph began discussing a separation whereby Americana would buy out Eric's ownership interest in Americana, thereby allowing Eric to establish his own company to continue creating and selling paintings and other products that utilize Eric's paintings.

11.   In or around March/April 2022, Joseph began claiming that Americana (not Eric) has the right to retain "sole ownership" of all copyrights to the paintings created by Eric.

12.   Prior to Joseph's involvement, Eric was acknowledged as the sole owner of the copyrights in the Artworks.

13.   Eric has never transferred ownership of his copyright interests in the Artworks to any

other party.

14.    Eric has never executed a work-for-hire agreement with Americana or been employed in a work-for-hire capacity in creating the Artworks.

15.    Eric now seeks declaratory relief from this Court determining that: (1) he is the sole owner of the four-hundred and sixty (460) copyrights to the Artworks identified herein, and, (2) he is entitled to the rights associated with his personal identity, including name, tile, picture or portrait as set forth in Abuse of Personal Identity Act (codified at Utah Code Ann. §45-3-1 *et seq.*).[1]

16.    This action is filed pursuant to Fed. R. Civ. P. 57[2] and 28 U.S.C. §2201(a)[3].

17.    Insofar as there are fifteen (15) painted images registered solely in Eric's name with the United States Copyright Office, Eric has met the precondition to filing a copyright-related action in federal court. (*See*, 17 U.S.C. § 411(a)[4], *Reed Elsevier, Inc. v. Muchnick*[5]). [See United States Copyright Office Catalog search results, attached as Exhibit 1].

18.    Pursuant to 28 U.S.C. § 1367[6], the Court has supplemental jurisdiction over all claims for relief associated with the other four hundred and forty-five (445) paintings that are unregistered with the United States Copyright Office.

19.    Similarly, the Court has supplemental jurisdiction over Plaintiff's claim for declaratory

---

[1] Utah Code Ann. § 45-3-1
[2] USCS Fed Rules Civ Proc R 57
[3] 28 USCS § 2201
[4] 17 USCS § 411
[5] *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 130 S. Ct. 1237, 176 L. Ed. 2d 18, 2010 U.S. LEXIS 2202, 93 U.S.P.Q.2D (BNA) 1719, 78 U.S.L.W. 4176, Copy. L. Rep. (CCH) P29,914, 38 Media L. Rep. 1321, 22 Fla. L. Weekly Fed. S 143
[6] 28 USCS § 1367

relief as to Eric's rights associated with his personal identity, including name, tile, picture

or portrait as set forth in Utah Code Ann. §45-3-1 *et seq.*

20.     Plaintiff requests that all issues raised in this Verified Complaint be tried by jury as

permitted by Fed. R. Civ. P. 38[7].

## PARTIES, JURISDICTION AND VENUE

21.     Plaintiff  is  a resident of Utah County, State of Utah.

22.     Defendant is a Utah limited company with its principal office located in Utah County,

Utah.

23.     Jurisdiction is proper to this Court because the declaratory relief sought under Plaintiff's

first cause of action invokes issues of copyright ownership under The Copyright Act of

1976 ( 17 U.S.C. § 101 *et seq.*).[8]

## STATEMENT OF FACTS

Historical Background

24.     Eric is a painter and artist.

25.     Typically, Eric's painting subjects include cities, landmarks, religious characters as well

as fantasy themes and a limited number of sublicensed Walt Disney-themed paintings.[9]

26.     Eric started working as an artist in the 1990's and established "Dowdle Folk Art" as an

artistic brand.

27.     In or around 1997, Eric adapted some of his paintings to be sold as puzzles.

28.     To date, more that 10 million puzzles featuring Eric's Artworks have been sold.

---

[7] USCS Fed Rules Civ Proc R 38
[8] 17 USCS § 101
[9] As previously noted, the eleven (11) Disney-themed paintings are not part of this action and Eric does not make any claims of copyright ownership in those 11 paintings.

29.     Additionally, Eric was featured as the host for the "Traveling with Eric Dowdle Program" which was broadcast on  satellite radio Sirius XM between March 2012 and October 2016.

30.      In 2015, the radio program evolved into the "Painting the Town with Eric Dowdle" television program which ran for three seasons and was hosted by Eric.

31.     Presently, Eric is contracted for a new television series with HBO (currently in production).

32.     Eric is also one of the founders of "Utah PTA Art Endowment" which raises funds for art programs throughout the State of Utah.

33.     Eric has received numerous awards and significant recognition for his Artworks.

34.     Eric initially sold copies of his Artworks under the unregistered name of "Auclair Galleries" beginning in approximately 1993.

35.     In 1994, Eric transitioned to using the name "Dowdle Folk Art" for his Artworks' business.

Formation of Americana Art Enterprises, LLC

36.     In May, 2003, Eric formed Defendant Americana Art Enterprises, LLC to further exploit his Artworks through mediums such as puzzles, original art, reproductions, etc.

37.     Originally, Eric was the majority and principal owner of Americana.

38.     In or around July 2007, Mark Dowdle (Eric's brother) and Wendy Hemingway were added as members of Americana.

39.     Eric remained Chief Executive Officer of Americana until March 2022.

40.     In or around April 2021, Americana hired Joseph Ogden to the position of "President and

Chief Innovation Officer."

41.     Joseph was required to report to Eric, Mark Dowdle and Wendy Hemmingway as owners

of Americana..

42.     As memorialized in the August, 2021 "Agreement for Exchange of Ownership Interest"

agreement with Joseph, Americana agreed (among other things):

    a.   to allow Joseph to receive voting rights equal to Eric, Mark Dowdle and Wendy

       Hemmingway (40 votes per person);

    b.   to allow Joseph to acquire 5% membership interest in Americana with an additional

       5% membership interest on the terms and conditions set forth the the Agreement for

       Exchange of Ownership Interest.

43.     Joseph promptly had drafted a revised Operating Agreement for Americana, which

Operating Agreement substantially modified the voting provisions of the company.

44.     Specifically, under the revised Operating Agreement, in the event of a tie vote between

Eric, Joseph, Mark Dowdle and Wendy Hemmingway as Managers on any issue, such a

tie "may" be submitted to the newly established Finance Oversight Committee.

45.     Eric, Joseph, Mark Dowdle and Wendy Hemmingway executed the revised Operating

Agreement on August 18, 2021.

46.     Eric has subsequently acknowledged that he failed to carefully read the provisions of the

August 18, 2021 revised Operating Agreement before signing.

47.     Furthermore, Eric was not advised by legal counsel before he executed the revised

Operating Agreement.

48.     After being hired, Joseph began exploring  the option of obtaining a substantial loan on

behalf of Americana.

49.   Joseph asked Eric what formula was used to estimate the value of the copyrights in the Artworks.

50.   Eric provided one example (of several possible methods) of valuation that he was aware of and that was used by an entertainment firm in Chicago.

51.   Joseph independently used the formula that Eric had mentioned to create his own valuation of the Artworks.

52.   Joseph used his own valuation of the Artworks in applying for a loan on behalf of Americana.

53.   Eric has never executed loan documents for the new proposed loan to Americana orchestrated by Joseph; nor was Eric part of any negotiations with potential lenders.

54.    Around March 2022, Joseph submitted to the other three Managers (Eric, Mark Dowdle and Wendy Hemmingway) a proposition to terminate Eric's position as Chief Executive Offer and to remove Eric as a Manager (thereby depriving him of any voting rights).

55.   Because the vote was tied between the four Managers, the proposals were submitted to the Finance Oversight Committee which approved Eric's termination as Chief Executive Officer and removal as a voting Manager.

56.   In March 2022, Joseph issued a proposed term sheet that would allow Eric to form his own company.

57.    However under Joseph's proposed terms of "separation," Eric would still befinancially and artistically obligated to Americana.

58.   For example, Joseph threatened that Americana would "dilute" Eric's ownership interest

unless he complied with specific demands (including transferring ownership of the copyrights in the Artworks to Americana and executing a new loan on behalf of Americana for the amount of approximately $4 million).

59. On May 16, 2022, Joseph notified Eric that "board" of Americana had voted to reduce Eric's salary from $312,000 annually to $156,000 annually.

60. Other Members and Managers of Americana have also proposed eliminating Eric as an artist and simply hiring artists already trained by Eric to *replicate* his process and work to create "folk art" imitating the style of Eric's Artworks.

61. Joseph has also demanded that, as part of this "separation," Americana would be acknowledged as the sole "owner" of all of the copyrights in the Artworks created by Eric.

62. In fact, Eric has never signed any work-for-hire agreement with Americana or acted in a work-for-hire capacity in creating the Artworks.

63. While Eric has pledged his rights in the Artworks as security and collateral for certain loans, Eric has never executed any assignment transferring ownership of the Artworks to any third-party.

64. Eric has always maintained that he is the creator and owner of the copyrights in the original Artworks images.

65. In fact, Joseph filed federal copyright registrations for fifteen (15) of Eric's paintings with the United States Copyright Office, thereby confirming that Joseph fully understood and acknowledged that Eric is the creator and owner of the copyrights in those fifteen paintings. [*See* Exhibit 1].

66.  These fifteen paintings are among those included in the spreadsheet list of Artworks attached as Exhibit 2. [*See* Spreadsheet of Artworks, attached as Exhibit 2]. [See Color Images of Artworks, attached as Exhibit 3].[10]

67.  Prior to Joseph's involvement, Eric ran Americana as the Chief Executive Officer and one of three owners of the company (along with Mark Dowdle and Wendy Hemingway).

68.  Prior to Joseph's involvement, Americana entered into several loan agreements that included "grant of security" provisions.

69.  Under these grant of security provisions, Eric (individually as guarantor) and Americana (as the borrowing entity) granted the lenders a security interest in intellectual property.

70.  However, Eric has never entered into any agreement whereby he transferred ownership of his copyrights in the Artworks to any individual or party. [See 17 U.S.C. § 204(a)].[11]

71.  Historically, Eric has received royalty payments for his licensing of the Artworks to Americana who produces and sells puzzles and related products incorporating the Artworks.

72.  At all times that Eric has conducted his business through Americana, Eric and Mark Dowdle have understood that Eric is the sole owner of the copyrights in the Artworks; but also that the Artworks were an asset that could be leveraged via license to Americana for various uses.

73.  Although not formalized in writing, the licensing of the Artworks to Americana was understood by both Eric and Mark Dowdle to allow Americana to exploit the Artworks

---

[10] The attached Color Images of the Artworks contains 367 pdf images listed in the Exhibit 2 Spreadsheet. Because of the conflict between the parties, Plaintiff was unable to obtain copies of 93 images that are, nevertheless listed in Exhibit 2 and are paintings created by Eric.
[11] 17 USCS § 204

for the various products and goods sold by Americana.

74.   Eric has not formalized a written licensing agreement with Americana because he was considered the "head" of Americana from 2003 until March 2022 and any licensing needs were approved by Eric in his role as owner.

75.   While Eric has informally allowed Americana full access to the copyrights for purposes of exploiting the Artworks, Eric has never granted Americana rights of copyright ownership to the Artworks.

76.   Eric is not proposing to in any way alter the nature of the security interest pledges that were made to lenders which includes any "intellectual property."

77.   Americana has also used Eric's name and likeness to sell its goods and products for almost 20 years.

78.   The name "Dowdle" appears on all of Americana's packaging and products.

79.   Americana has also relied upon Eric's name and likeness in relation to media activities (e.g. radio and television shows) that have benefited Americana's brand from an exposure and marketing standpoint.

The Artworks

80.   This action involves 460 distinct paintings (collectively, the "Artworks"), the titles of which are listed in the attached Exhibit 2 to this Complaint.

81.   Eric does not assert any copyright ownership in any Disney-themed paintings.

Artistic Process

82.   In 2004 Eric started painting his work in acrylic.

83.   Eric's use of acrylic paint in the "folk art" style was (and remains) unique.

84. In particular, Eric uses a painting process called "puddling."

85. The "puddling" process involves the layering of light color upon dark color until proper highlight is achieved.

86. Eric also spends extensive time researching the cities and locations that he chooses as subjects for the Artworks.

87. Eric begins his artistic process by drawing the entire image out in small scale (including buildings, natural structures, people, animals, etc.).

88. More recently, Eric has allowed some employees to assist with initial sketching.

89. The line drawing is then scanned into a computer and refined.

90. Next, Eric directs the choice of color to be placed in the scanned image ("color blocking").

91. The image is then printed out to a Masonite board.

92. Eric (or an employee under his direction) applies the initial basecoat colors.

93. Eric (or an employee under his direction) adds additional layers of color to the painting.

94. After the layers are applied, Eric finalizes the Artworks with a layer of color highlighting.

95. Eric does the research and original drawing/conceptualizing of each piece.

96. Eric directs the creative process from beginning to end and approves all final versions of the paintings.

97. All employees who have assisted with any painting understand and agree (both verbally and in writing) that their efforts are considered "work-for-hire."

98. Eric affixes his signature to all original pieces that he paints.

**FIRST CAUSE OF ACTION**
**(Declaratory Judgment as to Copyright Ownership)**

99.    Plaintiff realleges and incorporates the preceding allegations by reference as if set forth completely herein.

100.   Pursuant to Fed. R. Civ. P. 57[12] and 28 U.S.C. §2201(a)[13], Plaintiff requests that the Court declare the rights of the Plaintiff as to the ownership of the Artworks.

101.   Plaintiff is: (1) the original author of the Artworks and (2) the person who conceived and translated the imagery represented in the Artworks into a fixed, tangible expression. [*See* 17 U.S.C. § 201[14] and 17 U.S.C. § 102[15]].

102.   Accordingly, Plaintiff is the sole and exclusive owner of the copyrights in the Artworks.

### SECOND CAUSE OF ACTION
### (Declaratory Judgment as to Plaintiff's Right of Personal Identity)

103.   Plaintiff realleges and incorporates the preceding allegations by reference as if set forth completely herein.

104.   Defendant has used Plaintiff's name and likeness to motivate potential purchasers to buy goods offered by Defendant that incorporate Plaintiff's Artworks (e.g. puzzles).

105.   As a primary example, Defendant uses the name "Dowdle" on most of its packaging.

106.   Defendant has also relied on Plaintiff's promotional activities, including, but not limited to social media, television and radio appearances and events to market and sell its products.

107.   Defendant has no written or oral agreement with Plaintiff that permits Defendant to use Plaintiff's name, title, picture or portrait in perpetuity.

---

[12] USCS Fed Rules Civ Proc R 57
[13] 28 USCS § 2201
[14] 17 USCS § 201
[15] 17 USCS § 102

108.    Plaintiff is entitled to declaratory relief establishing that he is solely entitled to the rights associated with his personal identity, including name, tile, picture or portrait as set forth in Utah Code Ann. §45-3-1 *et seq*.).[16]

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in the form of declaratory relief against Defendant as follows:

1.    **FIRST CAUSE OF ACTION (Declaratory Judgment as to Copyright Ownership)**: finding that Plaintiff is the sole and exclusive owner of the copyrights in and to the Artworks.

2.    **SECOND CAUSE OF ACTION (Declaratory Judgment as to Plaintiff's Right of Personal Identity)**: finding that Plaintiff is solely and exclusively entitled to the rights associated with his personal identity, including name, tile, picture or portrait as set forth in Utah Code Ann. §45-3-1 *et seq*.

DATED and SIGNED May 20, 2022

> **HEIDEMAN & ASSOCIATES**
> /s/ Justin D. Heideman
> JUSTIN D. HEIDEMAN
> *Attorney for Plaintiff Eric Dowdle*

---

[16] Utah Code Ann. § 45-3-1