JUSTIN D. HEIDEMAN (USB No. 8897)
JUSTIN R. ELSWICK (USB No. 9153)
**HEIDEMAN & ASSOCIATES**
2696 North University Avenue, Suite 180
Provo, Utah 84604
Telephone: (801) 472-7742
Facsimile: (801) 374-1724
Email: jheideman@heidlaw.com
         jelswick@heidlaw.com
*Attorneys for Plaintiff Eric Dowdle*

**IN THE UNITED STATES DISTRICT COURT IN AND FOR
THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| ERIC DOWDLE,<br><br>    Plaintiff,<br><br>vs.<br><br>AMERICANA ART ENTERPRISES, LLC, a Utah limited liability company<br><br>    Defendant. | **AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Case No. 2:22-cv-00343-BSJ<br><br>Judge: Hon. Bruce S. Jenkins |

Plaintiff Eric Dowdle, by and through counsel undersigned, hereby files this Amended Complaint against Defendant Americana Art Enterprises, LLC as follows:

**STATEMENT OF THE CASE**

1.  Plaintiff Eric Dowdle ("Plaintiff" or "Eric') is a painter and artist who has created original paintings for more than thirty years.

2.  Since the early 1990's Eric has created at least four-hundred and seventy one (471) paintings, eleven (11) of which are Disney-themed paintings.

3.  The eleven (11) Disney-themed paintings are not at issue in this action and Eric makes no claim of copyright ownership of these Disney-themed paintings. The remaining 460

paintings (the "Artworks") are the subject of this action.

4. Defendant Americana Art Enterprises, LLC ("Americana") is an art-studio company based in Utah County, State of Utah that manufactures and sells Eric's Artworks in various configurations, including puzzles.

5. Americana was created by Eric in 2003 to further expand product lines featuring his paintings in various configurations.

6. In April 2021, Americana hired Joseph Ogden ("Joseph") as "President and Chief Innovation Officer."

7. At the time he was hired, Joseph was required to report to Eric (who was the C.E.O. of Americana) and the two other owners, Mark Dowdle and Wendy Hemingway.

8. Subsequently, Joseph has orchestrated the removal of Eric as C.E.O. and as a Manager of Americana.

9. From the beginning of his involvement with Americana approximately one year ago, Joseph has also increased his own voting power and ownership interest.

10. Eric and Joseph began discussing a separation whereby Americana would buy out Eric's ownership interest in Americana, thereby allowing Eric to establish his own company to continue creating and selling paintings and other products that utilize Eric's paintings.

11. In or around March/April 2022, Joseph began claiming that Americana (not Eric) has the right to retain "sole ownership" of all copyrights to the paintings created by Eric.

12. Prior to Joseph's involvement, Eric was acknowledged as the sole owner of the copyrights in the Artworks.

13. Eric has never transferred ownership of his copyright interests in the Artworks to any

other party.

14. Eric has never executed a work-for-hire agreement with Americana or been employed in a work-for-hire capacity in creating the Artworks.

15. Eric now seeks relief from this Court determining that:

   (1) Defendant is infringing Plaintiff's copyrights in and to at least four-hundred and sixty (460) Artworks that he created as identified herein in violation of the Copyright Act of the United States, 17 U.S.C. § 101 et seq.[1]

   (2) Defendant is in violation of Plaintiff's rights under the Visual Artists Rights Act ("VARA"), 17 U.S.C. § 106A[2], and

   (3) Plaintiff is exclusively entitled to the rights associated with his personal identity, including name, tile, picture or portrait as set forth in Abuse of Personal Identity Act (codified at Utah Code Ann. §45-3-1 *et seq*.).[3]

## PARTIES, JURISDICTION AND VENUE

16. Plaintiff is a resident of Utah County, State of Utah.

17. Defendant is a Utah limited company with its principal office located in Utah County, Utah.

18. This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act of the United States, 17 U.S.C. § 101, et seq.[4]

19. The Court has original subject matter jurisdiction over the copyright infringement claims

---

[1] 17 USCS § 101
[2] 17 USCS § 106A
[3] Utah Code Ann. § 45-3-1
[4] 17 USCS § 101

and the VARA claim pursuant to 28 U.S.C. § 1331 and 1338(a).[5]

20. Insofar as there are thirty-one Artworks registered solely in Eric's name with the United States Copyright Office, Eric has met the precondition to filing a copyright-related action in federal court. (See, 17 U.S.C. § 411(a)).[6] [*See* United States Copyright Office Catalog search results, attached as Exhibit 1].

21. Pursuant to 28 U.S.C. § 1367 , the Court has supplemental jurisdiction over all claims for relief associated with the other four hundred and twenty-nine (429) paintings that are not registered with the United States Copyright Office.[7]

22. This Court also has supplemental jurisdiction over Plaintiff's claim for as to Eric's rights associated with his personal identity, including name, title, picture or portrait (as set forth in Utah Code Ann. §45-3-1 et seq. arising under state law) under 28 U.S.C. § 1367, as that claim forms part of the same case or controversy.[8]

23. Plaintiff requests that all issues raised in this Amended Complaint be tried by jury as permitted by Fed. R. Civ. P. 38 .

24. This Court has personal jurisdiction over Defendant because, among other things, Defendant's principal place of business is located in Utah and because Defendant conducts business in the State of Utah.

25. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c)[9] because the infringement occurred in this district, and Defendant either resides in this district or has substantial and continuous ties to this district.

---

[5] 28 USCS § 1331 and 28 USCS § 1338
[6] 17 USCS § 411
[7] 28 USCS § 1367
[8] *Id.*
[9] 28 USCS § 1391

## STATEMENT OF FACTS

Historical Background

26. Eric is a painter and artist.

27. Typically, Eric's painting subjects include cities, landmarks, religious characters as well as fantasy themes and a limited number of sublicensed Walt Disney-themed paintings.[10]

28. Eric started working as an artist in the 1990's and established "Dowdle Folk Art" as an artistic brand.

29. In or around 1997, Eric adapted some of his paintings to be sold as puzzles.

30. To date, more that 10 million puzzles featuring Eric's Artworks have been sold.

31. Additionally, Eric was featured as the host for the "Traveling with Eric Dowdle Program" which was broadcast on satellite radio Sirius XM between March 2012 and October 2016.

32. In 2015, the radio program evolved into the "Painting the Town with Eric Dowdle" television program which ran for three seasons and was hosted by Eric.

33. Presently, Eric is contracted for a new television series with HBO (currently in production).

34. Eric is also one of the founders of "Utah PTA Art Endowment" which raises funds for art programs throughout the State of Utah.

35. Eric has received numerous awards and significant recognition for his Artworks.

36. Eric initially sold copies of his Artworks under the unregistered name of "Auclair Galleries" beginning in approximately 1993.

---

[10] As previously noted, the eleven (11) Disney-themed paintings are not part of this action and Eric does not make any claims of copyright ownership in those 11 paintings.

37. In 1994, Eric transitioned to using the name "Dowdle Folk Art" for his Artworks' business.

Formation of Americana Art Enterprises, LLC

38. In May, 2003, Eric formed Defendant Americana Art Enterprises, LLC to further exploit his Artworks through mediums such as puzzles, original art, reproductions, etc.

39. Originally, Eric was the majority and principal owner of Americana.

40. In or around July 2007, Mark Dowdle (Eric's brother) and Wendy Hemingway were added as members of Americana.

41. Eric remained Chief Executive Officer of Americana until March 2022.

42. In or around April 2021, Americana hired Joseph Ogden to the position of "President and Chief Innovation Officer."

43. Joseph was required to report to Eric, Mark Dowdle and Wendy Hemmingway as owners of Americana..

44. As memorialized in the August, 2021 "Agreement for Exchange of Ownership Interest" agreement with Joseph, Americana agreed (among other things):

   (1) to allow Joseph to receive voting rights equal to Eric, Mark Dowdle and Wendy Hemmingway (40 votes per person);

   (2) to allow Joseph to acquire 5% membership interest in Americana with an additional 5% membership interest on the terms and conditions set forth the Agreement for Exchange of Ownership Interest.

45. Joseph promptly had drafted a revised Operating Agreement for Americana, which Operating Agreement substantially modified the voting provisions of the company.

46. Specifically, under the revised Operating Agreement, in the event of a tie vote between Eric, Joseph, Mark Dowdle and Wendy Hemmingway as Managers on any issue, such a tie "may" be submitted to the newly established Finance Oversight Committee.

47. Eric, Joseph, Mark Dowdle and Wendy Hemmingway executed the revised Operating Agreement on August 18, 2021.

48. Eric was not advised by legal counsel before he executed the revised Operating Agreement.

49. After being hired, Joseph began exploring the option of obtaining a substantial loan on behalf of Americana.

50. Joseph asked Eric what formula was used to estimate the value of the copyrights in the Artworks.

51. Eric provided one example (of several possible methods) of valuation that he was aware of and that was used by an entertainment firm in Chicago.

52. Joseph independently used the formula that Eric had mentioned to create his own valuation of the Artworks.

53. Joseph used his own valuation of the Artworks in applying for a loan on behalf of Americana.

54. Eric has never executed loan documents for the new proposed loan to Americana orchestrated by Joseph; nor was Eric part of any negotiations with potential lenders.

55. Around March 2022, Joseph submitted to the other three Managers (Eric, Mark Dowdle and Wendy Hemmingway) a proposition to terminate Eric's position as Chief Executive Offer and to remove Eric as a Manager (thereby depriving him of any voting rights).

56. Because the vote was tied between the four Managers, the proposals were submitted to the Finance Oversight Committee which approved Eric's termination as Chief Executive Officer and removal as a voting Manager.

57. In March 2022, Joseph issued a proposed term sheet suggestion that Eric form his own company called "Dowdle Studios" and that Americana buyout Eric's 32% ownership interest

58. However under Joseph's proposed terms of "buyout," Eric would still be financially and artistically obligated to Americana.

59. For example, Joseph threatened that Americana would "dilute" Eric's ownership interest unless he complied with specific demands (including transferring ownership of the copyrights in the Artworks to Americana and executing a new loan on behalf of Americana for the amount of approximately $4 million).

60. On May 16, 2022, Joseph notified Eric that "board" of Americana had voted to reduce Eric's salary from $312,000 annually to $156,000 annually.

61. A short A short time later, Joseph notified Eric that he was no longer entitled to any further salary.

62. Other Members and Managers of Americana have also proposed eliminating Eric as an artist and simply hiring artists already trained by Eric to *replicate* his process and work to create "folk art" imitating the style of Eric's Artworks.

63. On September 15, 2002, Americana accidentally emailed a staff member of Eric's new company a painting titled "Red Rock Adventure" by a staff artist named "Andy Ellis" who is employed by Americana. [*See* Exhibit 2].

64. The Red Rock Adventure painting is demonstrably a direct copy of Eric's Artworks in arrangement, coloring, style and theme.

65. However, Eric had no involvement with the Red Rock Adventure painting.

66. Additionally, the "Dowdle" mark is prominently displayed in the communication.

67. This newly discovered information confirms the prior comments made by Joseph and other Members and Managers that, having terminated Eric from his position as C.E.O., employee and Manager, they are moving forward with their plan to hire other artists to simply duplicate his work and sell it under the "Dowdle" brand name.

68. Defendant is engaged or intending to engage in the sale of art and derivative products that are falsely attributed to Plaintiff.

69. Joseph has also demanded that, as part of the "buyout" of Eric's interest, " Americana would be acknowledged as the sole "owner" of all of the copyrights in the Artworks created by Eric and that Eric must sign a waiver of his rights in the Artworks.

70. In fact, Eric has never signed any work-for-hire agreement with Americana or acted in a work-for-hire capacity in creating the Artworks.

71. While Eric has pledged his rights in the Artworks as security and collateral for certain loans, Eric has never executed any assignment transferring ownership of the Artworks to any third-party.

72. Eric has always maintained that he is the creator and owner of the copyrights in the original Artworks images.

73. Joseph filed federal copyright registrations for fifteen (15) of Eric's paintings with the United States Copyright Office, thereby confirming that Joseph fully understood and

acknowledged that Eric is the creator and owner of the copyrights in those fifteen paintings. [*See* Exhibit 1].

74. These fifteen paintings are among those included in the spreadsheet list of Eric's Artworks. [*See* Spreadsheet of Artworks, [Doc. 3-1]. [*See* Color Images of Artworks, Doc. 3-2 through 3-17].[11]

75. Prior to Joseph's involvement, Eric ran Americana as the Chief Executive Officer and one of three owners of the company (along with Mark Dowdle and Wendy Hemingway).

76. Prior to Joseph's involvement, Americana entered into several loan agreements that included "grant of security" provisions.

77. Under these grant of security provisions, Eric (individually as guarantor) and Americana (as the borrowing entity) granted the lenders a security interest in intellectual property.

78. However, Eric has never entered into any agreement whereby he transferred ownership of his copyrights in the Artworks to any individual or party. [See 17 U.S.C. § 204(a)].[12]

79. Historically, Eric has received royalty payments for his licensing of the Artworks to Americana who produces and sells puzzles and related products incorporating the Artworks.

80. At all times that Eric has conducted his business through Americana, Eric and Mark Dowdle have understood that Eric is the sole owner of the copyrights in the Artworks; but also that the Artworks were an asset that could be leveraged via license to Americana for various uses.

---

[11] The Color Images of the Artworks contains 367 pdf images listed in the Doc. 3-1 Spreadsheet. Because of the conflict between the parties, Plaintiff was unable to obtain copies of 93 images that are, nevertheless listed in Exhibit 2 and are paintings created by Eric.
[12] 17 USCS § 204

81. Although not formalized in writing, Eric and Mark Dowdle understood that Americana was allowed to "administer" and exploit the Artworks for the various products and goods sold by Americana.

82. Eric has not formalized a written licensing agreement with Americana because he was considered the "head" of Americana from 2003 until March 2022 and any licensing needs were approved by Eric in his role as owner.

83. While Eric has informally allowed Americana permission to administer and exploit the Artworks, Eric has never granted Americana rights of copyright ownership to the Artworks.

84. Prior to Joseph's involvement Americana would grant certain benefits, payments and concessions to compensate Eric for royalties for the use of the Artworks

85. Since Eric was terminated as C.E.O., Manager and employee, Americana not obtained obtain authorization to continue selling Eric's Artworks and associated derivative products.

86. During the first weekend of September, 2022, Americana maintained a successful art booth at "Swiss Days" in Midway, Utah.

87. Americana publicly displayed and sold art and derivative products incorporating Eric's Artwork without authorization or approval from Eric.

88. Americana continues to manufacture, market, ship and sell art and derivative products incorporating Erics Artwork throughout the United States (including at Costco stores) without authorization or approval from Eric.

89. Furthermore, Americana has not paid Eric any royalties, fees or compensation for the

ongoing use of his Artworks and sale of associated derivative products (including puzzles, fine art and other products incorporating the Artworks).

90. Americana has also used Eric's name and likeness to sell its goods and products for almost 20 years.

91. The name "Dowdle" appears on all of Americana's packaging and products.

92. Americana has also relied upon Eric's name and likeness in relation to media activities (e.g. radio and television shows) that have benefited Americana's brand from an exposure and marketing standpoint.

The Artworks

93. This action involves 460 distinct paintings (collectively, the "Artworks"). [*See* Doc. 3-1].

94. Eric does not assert any copyright ownership in any Disney-themed paintings.

Artistic Process

95. In 2004 Eric started painting his work in acrylic.

96. Eric's use of acrylic paint in the "folk art" style was (and remains) unique.

97. In particular, Eric uses a painting process called "puddling."

98. The "puddling" process involves the layering of light color upon dark color until proper highlight is achieved.

99. Eric also spends extensive time researching the cities and locations that he chooses as subjects for the Artworks.

100. Eric begins his artistic process by drawing the entire image out in small scale (including buildings, natural structures, people, animals, etc.).

101. More recently, Eric has allowed some employees to assist with initial sketching.

102. The line drawing is then scanned into a computer and refined.

103. Next, Eric directs the choice of color to be placed in the scanned image ("color blocking").

104. The image is then printed out to a Masonite board.

105. Eric (or an employee under his direction) applies the initial basecoat colors.

106. Eric (or an employee under his direction) adds additional layers of color to the painting.

107. After the layers are applied, Eric finalizes the Artworks with a layer of color highlighting.

108. Eric does the research and original drawing/conceptualizing of each piece.

109. Eric directs the creative process from beginning to end and approves all final versions of the paintings.

110. All employees who have assisted with any painting understand and agree (both verbally and in writing) that their efforts are considered "work-for-hire."

111. Eric affixes his signature to all original pieces that he paints.

**FIRST CAUSE OF ACTION**
**(Copyright Infringement–17 U.S.C. §§ 106, et seq.: Direct, Contributory, Vicarious)**

112. Plaintiff realleges and incorporates the preceding allegations by reference as if set forth completely herein.

113. Plaintiff is: (1) the original author of the Artworks and (2) the person who conceived and translated the imagery represented in the Artworks into a fixed, tangible expression. [*See* 17 U.S.C. § 201[13] and 17 U.S.C. § 102[14]].

---

[13] 17 USCS § 201
[14] 17 USCS § 102

114. Accordingly, Plaintiff is the sole and exclusive owner of the copyrights in the Artworks.

115. Defendant has produced, reproduced, prepared derivative works based upon, distributed publicly displayed Eric's protected work or derivatives of Eric's protected work without his consent.

116. Defendant's acts violate Eric's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106 and 501, including Eric's exclusive rights to produce, reproduce, and distribute copies of his work, to create derivative works, and to publicly display his work.

117. Defendant's infringement has been undertaken knowingly, and with intent to financially gain from Eric's protected copyrighted Artworks.

118. Defendant has failed to exercise its right and ability to supervise persons within its control (including Managers, Officers and employees of Americana) to prevent infringement, and did so with intent to further its financial interest in the infringement of the Artworks.

119. Accordingly, Defendant has directly, contributorily, and vicariously infringed Eric's copyrighted Artworks in violation of 17 U.S.C. § 501.

120. Because of Defendant's infringing acts, Eric is entitled to his actual damages and Defendant's profits attributable in an amount to be proved at trial and all other relief allowed under the Copyright Act and as set forth in 17 U.S.C. §§ 503 and 504.

121. Eric is further entitled to attorney's fees and costs under 17 U.S.C. § 505.

122. Furthermore, Defendant's infringement has caused and is causing irreparable harm to Eric, for which he has no adequate remedy at law. Unless this Court restrains Defendants from infringing Eric's protected Artworks, the harm will continue to occur in the future.

123. Accordingly, Eric is entitled to preliminary and permanent injunction as permitted by 17 U.S.C. §502.

## SECOND CAUSE OF ACTION
**( Copyright Infringement–17 U.S.C. §§ 106, et seq.: Copying of protected components of the copyrighted material: Direct, Contributory, Vicarious ).**

124. Plaintiff realleges and incorporates the preceding allegations by reference as if set forth completely herein.

125. Americana has intentionally hired, paid and instructed employees to illegally copy Eric's arrangement, coloring, style and themes and to create paintings that are imitative of Eric's distinctive Artworks.

126. Eric is the owner of the copyrights in the Artworks and Americana's artist(s) have directly copied "constituent elements of the work that are original."

127. Defendants' acts violate Eric's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106 and 501, including Eric's exclusive rights to produce, reproduce, and distribute copies of his work, to create derivative works, and to publicly display his work.

128. Defendant's infringement has been undertaken knowingly, and with intent to financially gain from Eric's protected copyrighted Artworks.

129. Defendant has failed to exercise its right and ability to supervise persons within its control (including Managers, Officers and employees of Americana) to prevent infringement, and did so with intent to further its financial interest in the infringement of the Artworks.

130. Accordingly, Defendant has directly, contributorily, and vicariously infringed Eric's copyrighted Artworks in violation of 17 U.S.C. § 501.

131. Because of Defendant's infringing acts, Eric is entitled to his actual damages and Defendant's profits attributable in an amount to be proved at trial and all other relief allowed under the Copyright Act and as set forth in 17 U.S.C. §§ 503 and 504.

132. Eric is further entitled to attorney's fees and costs under 17 U.S.C. § 505.

133. Furthermore, Defendant's infringement has caused and is causing irreparable harm to Eric, for which he has no adequate remedy at law. Unless this Court restrains Defendants from infringing Eric's protected Artworks, the harm will continue to occur in the future.

134. Accordingly, Eric is entitled to preliminary and permanent injunction as permitted by 17 U.S.C. §502.

## THIRD CAUSE OF ACTION
### (VARA Claim—17 U.S.C. § 106A).

135. Plaintiff realleges and incorporates the preceding allegations by reference as if set forth completely herein.

136. 17 U.S.C. § 106A(a)(1)(B) provides that an author of a work of visual art shall have to right "to prevent the use of his or her name as the author of any work of visual art which he or she did not create."

137. Americana has intentionally hired, paid and instructed employees to copy Eric's arrangement, coloring, style and themes and to create paintings that are imitative of Eric's distinctive Artworks.

138. Americana has sold or is intending to sell the replications of Eric's Artworks under the "Dowdle" brand name even though Eric was not involved in any of the creative aspects of said replications.

139. Defendants' acts violate Eric's exclusive rights under the Copyright Act, 17 U.S.C. §§

106 and 501, including Eric's exclusive rights to produce, reproduce, and distribute copies of his work, to create derivative works, and to publicly display his work.

140. Defendant's efforts to replicate Eric's Artworks by using other artists and selling the replications under the "Dowdle" brand name has been undertaken knowingly, and with intent to benefit from Eric's protected copyrighted Artworks.

141. Defendant has failed to exercise its right and ability to supervise persons within its control (including Managers, Officers and employees of Americana) to prevent the violations of Eric's rights under the VARA, and did so with intent to further its financial interest.

142. Accordingly, Defendant has directly, contributorily, and vicariously infringed Eric's copyrighted Artworks in violation of 17 U.S.C. § 501.

143. Because of Defendant's infringing acts, Eric is entitled to his actual damages and Defendant's profits attributable in an amount to be proved at trial and all other relief allowed under the Copyright Act and as set forth in 17 U.S.C. §§ 503 and 504.

144. Eric is further entitled to attorney's fees and costs under 17 U.S.C. § 505.

145. Furthermore, Defendant's actions in replicating Eric's Artworks caused and is causing irreparable harm to Eric, for which he has no adequate remedy at law. Unless this Court restrains Defendants from infringing Eric's protected Artworks, the harm will continue to occur in the future.

146. Accordingly, Eric is entitled to preliminary and permanent injunction as permitted by 17 U.S.C. §502.

## FOURTH CAUSE OF ACTION
### (Plaintiff's Right of Personal Identity—Utah Code Ann. §45-3-1 et seq.)

147. Plaintiff realleges and incorporates the preceding allegations by reference as if set forth completely herein.

148. Defendant has used Plaintiff's name and likeness to motivate potential purchasers to buy goods offered by Defendant that incorporate Plaintiff's Artworks and derivative products (e.g. puzzles).

149. As a primary example, Defendant uses the name "Dowdle" on most of its packaging.

150. Defendant has also relied on Plaintiff's promotional activities, including, but not limited to social media, television, festivals and radio appearances and events to market and sell its products.

151. Defendant has no written or oral agreement with Plaintiff that permits Defendant to use Plaintiff's name, title, picture or portrait in perpetuity.

152. Plaintiff is entitled to entitled to injunctive relief, damages alleged and proved, exemplary damages, and reasonable attorney's fees and costs as a result of Defendant's abuse of Plaintiff's personal identity as set forth in Utah Code Ann. §45-3-1 *et seq.*).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in the form of declaratory relief against Defendant as follows:

1. **FIRST CAUSE OF ACTION (Copyright Infringement–17 U.S.C. §§ 106, et seq.; Direct, Contributory, Vicarious):** (1) Actual damages and Defendant's profits attributable in an amount to be proved at trial and all other relief allowed under the Copyright Act and as set forth in 17 U.S.C. §§ 503 and 504, (2) attorney's fees and costs

      under 17 U.S.C. § 505 and  (3) preliminary and permanent injunction as permitted by 17 U.S.C. §502.2.

2. **SECOND CAUSE OF ACTION (Copyright Infringement–17 U.S.C. §§ 106, et seq.: Copying of protected components of the copyrighted material: Direct, Contributory, Vicarious):** (1) Actual damages and Defendant's profits attributable in an amount to be proved at trial and all other relief allowed under the Copyright Act and as set forth in 17 U.S.C. §§ 503 and 504, (2) attorney's fees and costs under 17 U.S.C. § 505 and  (3) preliminary and permanent injunction as permitted by 17 U.S.C. §502.

3. **THIRD CAUSE OF ACTION (VARA Claim—17 U.S.C. § 106A):** (1) Actual damages and Defendant's profits attributable in an amount to be proved at trial and all other relief allowed under the Copyright Act and as set forth in 17 U.S.C. §§ 503 and 504, (2) attorney's fees and costs under 17 U.S.C. § 505 and  (3) preliminary and permanent injunction as permitted by 17 U.S.C. §502.

4. **FOURTH CAUSE OF ACTION (Plaintiff's Right of Personal Identity—Utah Code Ann. §45-3-1 et seq.):** injunctive relief, damages alleged and proved, exemplary damages, and reasonable attorney's fees and costs.

      DATED and SIGNED September 27, 2022

                                                       HEIDEMAN & ASSOCIATES
/s/ Justin D. Heideman
JUSTIN D. HEIDEMAN
*Attorney for Plaintiff Eric Dowdle*

## CERTIFICATE OF SERVICE

On September 27, 2022 the undersigned certifies a true and correct copy of the foregoing **AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** was served on the following:

| Party/Attorney | Method |
|---|---|
| *Attorneys for Defendant*<br>Brady Brammer (13411)<br>Matthew C. Piccolo (15707)<br>BRAMMER RANCK, LLP<br>1955 W. Grove Parkway, Suite 200<br>Pleasant Grove, Utah 84602<br>Telephone: (801) 893-3951<br>Email: bbrammer@brfirm.com<br>         mpiccolo@brfirm.com<br><br><br>Charles L. Roberts (#5135)<br>WASATCH-IP, A PROFESSIONAL CORP.<br>2825 E. Cottonwood Parkway, Suite 500<br>Salt Lake City, Utah 84121<br>Telephone: (801) 292-5300<br>Email: croberts@wasatch-ip.com | Hand Delivery<br>U.S. Mail, postage prepaid<br>Overnight Mail<br>Fax Transmission<br>X Electronic Filing Notice [CM/ECF] |

**HEIDEMAN & ASSOCIATES**
/s/ Samantha Fowlkes
SAMANTHA FOWLKES
Legal Assistant